UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES CAMPER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:17-cv-01298 |
| | ) CHIEF JUDGE CRENSHAW |
| LYFT TENNESSEE, INC., LYFT, INC., | ) |
| CARA CROSSAN | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the Court is pro se Plaintiff James Camper's Motion to Vacate Arbitration Award. (Doc. No. 31.) For the reasons that follow, Camper's motion is denied.

## I. Background

Camper sued Defendants Lyft Tennessee, Inc., Lyft, Inc. ("Lyft"), and Cara Crossan for: (1) sexual harassment; (2) retaliation; (3) religious discrimination; (4) negligent hiring; and (5) emotional distress. (Doc. No. 18.) On October 12, 2017, the parties agreed to submit the case to arbitration pursuant to their Mutual Arbitration Agreement. (Doc. No. 33 at 1.) An arbitration hearing was held on May 1-3, 2018 between Camper and Lyft. (Doc. No. 31 at 30.) On June 14, 2018, an American Arbitration Association ("AAA") Arbitrator (the "Arbitrator") entered an arbitration award in favor of Lyft and denied all of Plaintiff's claims. (Doc. No. 30-1.) Plaintiff now seeks to vacate the Arbitrator's award.

## II. Standard of Review

"The Federal Arbitration Act ('FAA') expresses a presumption that arbitration awards will be confirmed." Uhl v. Komatsu Forklift Co., 512 F.3d 294, 305 (6th Cir. 2008) (quoting

1

Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir. 2005)). "When courts are called on to review an arbitrator's decision, the review is very narrow"—one of the narrowest standards of judicial review in American jurisprudence. Samaan v. Gen. Dynamics Land Sys., Inc., 835 F.3d 593, 600 (6th Cir. 2016) (quoting Uhl, 512 F.3d at 305). An arbitration award can be vacated under the FAA in only four situations:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also Tenn. Code Ann. § 29-5-313(a). "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." Samaan, 835 F.3d at 600 (quoting Solvay Pharm., Inc. v. Duramed Pharm., Inc., 442 F.3d 471, 476 (6th Cir. 2006)). The moving party bears the burden of establishing grounds to vacate the arbitration award. See Bauer v. Carty & Co., Inc., 246 F. App'x 375, 379 (6th Cir. 2007).

### III. Analysis

Camper argues that the arbitration award should be vacated based on the first, second, and fourth grounds outlined in the FAA.[1]

---

[1] A document filed pro se is "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citation omitted). The Court must liberally read Camper's best arguments without accepting his legal conclusions or unwarranted factual inferences as true. See Hines v. Everest Inst., No. 2:13-CV-15219, 2014 WL 2779722, at *3 (E.D. Mich. June 19, 2014). The Court has done so here.

2

### A. Award Procured by Corruption, Fraud, or Undue Means

To merit vacating an arbitration award under § 10(a)(1) for either fraud or undue means, the movant must demonstrate: "(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc., 335 F.3d 497, 503 (6th Cir. 2003). Although similar to fraud, courts have given the term "undue means" a definition of "bad faith behavior by the winning party" that is "immoral if not illegal." Barcume v. City of Flint, 132 F. Supp. 2d 549, 556 (E.D. Mich. 2001) (internal citations omitted). Regardless of whether a party alleges fraud or undue means, courts should apply the same three-part test. See AmSurg Glendale, Inc. v. Glendale Surgery Partners, No. 3:16-cv-00862, 2017 WL 5749670, at *3 (M.D. Tenn. Mar. 22, 2017).

Camper argues that the award was procured by corruption, fraud, or undue means because: (1) Lyft lied in its interrogatory answers when it stated that it did not know that Miranda Hunt, a former employee, was a defendant in a murder case at the time of her hire; (2) he received delayed responses from the AAA confirming receipt of filings submitted to the Arbitrator or the AAA did not send his filings to the Arbitrator; (3) the Arbitrator failed to disclose the extent to which Lyft's law firm had previously represented another party in a different arbitration before the Arbitrator.[2] Camper's three arguments are addressed in turn below.

---

[2] In his initial motion, Camper also argued that the Court should vacate the arbitration award because the AAA changed the assigned arbitrator without reason or explanation. Camper, however, withdraws this particular argument in his reply. (Doc. No. 34 at 5.)

3

### 1. Lyft's Interrogatory Responses

Camper's Interrogatory Number 8 asks, "Did the company know that Ms. Hunt was a defendant in a murder case at the time of her hire?" (Doc. No. 33-1 at 2.) Lyft responded that it "did not know that Ms. Hunt was a defendant in a murder case at the time of her hire." (Doc. No. 33-2 at 6.) Camper argues that Lyft lied in this interrogatory response. In support of his assertion, Camper discusses two pieces of evidence. First, Camper cites allegations Ms. Hunt raised in a separate lawsuit she filed against Lyft, which state that at the time she was hired Lyft knew that she "had an arrest record" and that her background screening reflected "pending criminal charges." (Doc. No. 31 at 54, 57.) Second, Camper discusses Lyft's background check of Ms. Hunt for felonies and misdemeanors, which says "Alert – 1 Record Found." (Id. at 63.)

Camper fails to demonstrate clear and convincing evidence of fraud with these two pieces of evidence. The evidence Camper discusses does not support his assertion that Lyft knew Ms. Hunt was charged with murder at the time of her hire. The evidence merely mentions an arrest record, criminal charges, and a felony and/or misdemeanor record but provides no specific discussion of murder charges. Therefore, the arbitration award will not be vacated on this basis.

### 2. The AAA's Behavior Regarding Camper's Filings

Camper states that there were "several instances that Plaintiff sent in documents to the case manager and would receive a severely delayed response of it being received or ultimately finding out that [his] document wasn't sent to the Arbitrator whatsoever" and that there was never a delayed response from the AAA when it received documents from Lyft. (Doc. No. 31 at 6.) Plaintiff provides no support for his assertion that he would ultimately find out that his document was never sent to the Arbitrator or that the AAA never delayed responding to Lyft. In addition, Camper only cites one instance regarding his allegation that he would receive a severely delayed

response from the AAA. Camper refers to a March 23, 2018 e-mail that he sent to the AAA stating that he did not receive a message that his March 15, 2018 submission had been sent to the Arbitrator. (Doc. No. 31 at 67.) However, Camper fails to include the AAA's response on March 23, 2018, which states, "We have sent [it] to the Arbitrator." (Doc. No. 33-4 at 2.) The behavior Camper describes does not rise to the level of "immoral if not illegal" behavior to constitute undue means. In addition, with this single piece of evidence, Camper has not demonstrated clear and convincing evidence of fraud or that any such fraud materially relates to an issue involved in the arbitration. Accordingly, Camper has not sufficiently demonstrated that the arbitration award should be vacated on this basis.

### 3. The Arbitrator's Connection to the Law Firm Representing Lyft

Camper also argues that the arbitration award should be vacated because the Arbitrator failed to disclose the extent to which Lyft's law firm had previously represented another party in a different arbitration before the Arbitrator. Camper states that in the Arbitrator's Notice of Appointment, the Arbitrator said, "I believe that the law firm for Respondent may have represented a party before me in previous arbitrations." Evidence of this statement is not in the exhibit Camper cites. In fact, the Arbitrator circled "No" in response to the question, "Have you had any professional or social relationship with counsel for any party in this proceeding or the firms for which they work?" (Doc. No. 31 at 81.) However, even if the Court assumes that the Arbitrator made the statement Camper asserts, the mere fact that the law firm representing Lyft has previously appeared before the Arbitrator does not create a conflict of interest or demonstrate undue means. Thus, Camper has failed to demonstrate any grounds for vacating the arbitration award based on § 10(a)(1).

5

## B. Partiality or Corruption in the Arbitrator

The Sixth Circuit has held that to show corruption or evident partiality the challenging party bears the burden to show "that a reasonable person would have to conclude that an arbitrator was partial to the other party to the arbitration." Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 306 (6th Cir. 2008) (citation and internal quotation marks omitted). This standard does not require proof of actual bias but requires more than an "appearance of bias." Questar Capital Corp. v. Gorter, 909 F. Supp. 2d 789, 815 (W.D. Ky. 2012) (quoting Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 (6th Cir. 1989)). The partiality must be "direct, definite, and capable of demonstration" and the moving party "must establish specific facts that indicate improper motives on the part of the arbitrator." Physicians Ins. Capital v. Praesidium All. Grp., 562 F. App'x 421, 425 (6th Cir. 2014) (internal quotation marks and citation omitted).

Camper contends the Arbitrator was partial and corrupt because he: (1) treated the parties' witnesses differently when he questioned two of Camper's witnesses about their educational backgrounds and one witness about her fluency in certain languages but failed to direct the same questions at Lyft's witnesses; (2) screamed at Camper; (3) communicated ex parte with Lyft; (4) did not give Camper an opportunity to review the hearing transcript before submitting his post-hearing brief; (5) allowed Lyft to introduce exhibits during the hearing that were not on its exhibit list; and (6) entertained allowing Defendant to add a witness to its witness list after the deadline. Each of these arguments is discussed in turn below.

### 1. Incongruent Treatment of Witnesses

Camper argues that the Arbitrator was partial or corrupt because he treated the parties' witnesses differently when he questioned two of Camper's witnesses about their educational backgrounds and one witness about her fluency in certain languages but failed to direct the same

questions at Lyft's witnesses. Camper asserts that this improper treatment was due to the Arbitrator's racial bigotry.

Camper has not met his burden to demonstrate the Arbitrator's partiality or corruption because a reasonable person would not conclude that the Arbitrator was partial to Lyft because he questioned only Camper's witnesses about their educational backgrounds and language fluency. In addition, Camper has failed to establish specific or circumstantial facts indicating that the Arbitrator was racially biased. The mere questioning of Camper's Latina and African-American witnesses about their educational background and language fluency does not indicate racial bias. Accordingly, Camper has failed to demonstrate that the arbitration award should be vacated on this basis.

### 2. The Arbitrator Screaming at Camper

Camper next asserts that the Arbitrator was partial or corrupt because he screamed at him several times but did not yell at anyone else. Lyft states that it "can recall no instances in which the Arbitrator inappropriately raised his voice toward Plaintiff or otherwise engaged in unprofessional behavior." (Doc. No. 33 at 8.) Although the yelling Camper describes, if it occurred, is inappropriate, it is not a basis for the Court to vacate the arbitration award. A reasonable person would not be forced to conclude that the Arbitrator was partial in favor of Lyft because he screamed at Camper and not Lyft.

### 3. The Arbitrator Engaged in Ex Parte Communications

Camper also argues that the Arbitrator was partial or corrupt because he engaged in ex parte communications with Lyft. However, the only examples Camper provides are two e-mails from Lyft sent to both the Arbitrator and Camper. (Doc. No. 31 at 100-01.) Although Lyft may have violated AAA rules when it e-mailed documents directly to the Arbitrator instead of the AAA,

7

the evidence Camper submits is insufficient to demonstrate partiality or corruption to vacate an arbitration award.

### 4. Hearing Transcript

Camper contends that the Arbitrator was partial or corrupt because the deadline he set for post-trial briefs was before the arbitration transcripts would be ready. Lyft received rough draft transcripts before the deadline for post-trial briefs but Camper did not. However, as both parties agree, Camper never objected to the Arbitrator's deadline for post-trial briefs until now. See Apperson, 879 F.2d at 1358-59 ("[A]s a general rule, a grievant must object to an arbitrator's partiality at the arbitration hearing before such an objection will be considered by the federal courts."); Gorter, 909 F.Supp.2d at 814 ("A party cannot remain silent as to perceived or actual partiality or bias and then later object after the [arbitration] panel reaches an unfavorable decision."). In addition, Camper has not discussed any facts indicating that the Arbitrator had improper motives. Accordingly, the arbitration award will not be vacated on this basis.

### 5. Lyft's Exhibits

Camper next asserts that the Arbitrator was partial or corrupt because he allowed Lyft to introduce two documents that were not on its exhibit list. However, the record presented to the Court reflects that Lyft did not put those two documents into evidence as exhibits but that they were merely used to refresh a witness's recollection and to impeach a witness. (See Doc. No. 33-14 at 7-10; Doc. No. 33-15 at 2-3.) Therefore, it was within the arbitrator's discretion to admit them. See Jordan v. ENSCO Offshore Co., No. 15-1226, 2016 WL 2822586, at *2 (E.D. La. May 13, 2016) ("Nothing in Rule 612 requires that a writing or document used to refresh a witness's recollection must be disclosed prior to trial or listed as an exhibit in the parties' proposed pre-trial order . . . writings used to refresh a witness's recollection are not exhibits and need not be disclosed

in advance of trial."); Davis v. Lakeside Motor Co., Inc., No. 3:10-CV-405 JD, 2014 WL 1316945, at *11 (N.D. Ind. Mar. 31, 2014) (noting that "[a]ny exhibit not identified [in advance of the pretrial conference] will be excluded from trial for all purposes other than impeachment or refreshing recollection"); Jones v. Sheahan, Nos. 99 C 3669, 01 C 1844, 2003 WL 22508171, at *11 (N.D. Ill. Nov. 4, 2003) ("[T]he Court made it clear that while the letters could not be used as marked exhibits (because they were not listed on the pretrial order), they could be used to refresh recollection or to impeach the witness.").[3] Moreover, even if, assuming arguendo, the arbitrator's decision to admit these exhibits was improper on a legal basis, Camper has not discussed any facts to demonstrate that the Arbitrator's motives in deciding to admit them were partial or corrupt. Camper's motion, therefore, is denied on this basis.

### 6. Lyft's Witnesses

Last, Camper argues that the Arbitrator demonstrated partially or corruption because he reserved decision on whether to allow Lyft to add a witness after the deadline for the parties' witness lists and four days before the arbitration hearing. Lyft, however, never introduced the witness. Camper's contention that the Arbitrator's decision to reserve ruling on this issue does not demonstrate an appearance of bias, let alone more than such appearance. See Gorter, 909 F. Supp. 2d at 815. Therefore, the arbitration award will not be vacated based on this argument. In addition, even when all of the arguments Camper raises regarding impartiality and corruption are taken together, he does not meet his burden to demonstrate that the arbitration award should be vacated based on § 10(a)(2).

---

[3] At the arbitration, the Arbitrator noted that the Federal Rules of Evidence do not apply but still appeared to follow them when making his evidentiary decision. (See Doc. No. 33-14 at 7-10; Doc. No. 33-15 at 2-3.)

9

### C. Arbitrator Exceeded Powers

The Sixth Circuit has noted that "[t]he burden of proving that the arbitrators exceeded their authority is very great." Solvay Pharm. v. Duramed Pharm., 442 F.3d 471, 476 (6th Cir. 2006) (internal quotations and citation omitted). "The terms of the contract define the powers of the arbitrator, and 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision.'" Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). If a court can find any argument that is legally plausible and supports the award, then the award must be confirmed. Id.

Camper argues that the Arbitrator exceeded his powers when he issued a subpoena requiring an individual, who lived more than 100 miles from the arbitration, to appear to testify at the arbitration hearing because the subpoena was in violation of Federal Rule of Civil Procedure 45(c). However, the witness was never called to testify at the hearing. The Arbitrator's subpoena, thus, had no impact on the arbitration award and certainly does not constitute a serious error sufficient to overturn the arbitrator's decision. Therefore, Camper is not entitled to have the arbitration award vacated based on § 10(a)(4).

### IV. Conclusion

For the reasons discussed above, Camper's Motion to Vacate Arbitration Award (Doc. No. 31) is **DENIED**. An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE